JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michelle Cofer; Keedric M. Cofer; Cortez Jenkins;
Tameisha Jenkins; Marlon Hester, Sr.; Geraldine Andre;
Djvenino Andre; and Monika Griffin

**DEFENDANTS**

FINANCIAL EDUCATION SERVICES, INC.
dba United Wealth Education; UNITED WEALTH SERVICES,
INC. dba United Wealth Education

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer Paillon (P80284); Blue Lotus Legal
30790 Valley Drive, Farmington Hills, MI 48334
(734) 904-9522; BlueLotusLegal@gmail.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____
Brief description of cause:
_____

## VII. REQUESTED IN    COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S)    IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                    ☐ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other        ☐ Yes
          court, including state court? (Companion cases are matters in which    ☐ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


   Notes :

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MICHELLE COFER | * | CASE NO. |
| And | * | |
| KEEDRIC M. COFER | * | |
| and | * | |
| CORTEZ JENKINS | * | |
| and | * | |
| TAMEISHA JENKINS | * | |
| and | * | |
| MARLON HESTER, SR. | * | |
| and | * | |
| GERALDINE ANDRE | * | |
| and | * | |
| DJIVENINO ANDRE | * | |
| and | * | |
| MONIKA GRIFFIN | * | |
| Individually and on behalf of all others similarly situated | * | |
| | * | |
| Plaintiffs | | |
| | * | |
| vs. | | |
| | * | |

FINANCIAL EDUCATION
SERVICES, INC.                        *
dba United Wealth Education
                                      *

and                                   
UNITED WEALTH SERVICES, INC.  *
dba United Wealth Education
                                      *

     Defendants

---

## CLASS ACTION COMPLAINT
### (Jury Demand Endorsed Hereon)

---

For their complaint against Defendants, Plaintiffs, individually, and on behalf of all others similarly situated, say as follows:

<u>PARTIES, JURISDICTION AND VENUE</u>

1. Plaintiff Michelle Cofer ("M. Cofer") is a natural person residing in Winder, GA.

2. Plaintiff Keedic Cofer ("K. Cofer") is a natural person residing in Winder, GA.

3. Plaintiff Cortez Jenkins ("C. Jenkins") is a natural person residing in Atlanta, GA.

4. Plaintiff Tameisha Jenkins ("T. Jenkins") is a natural person residing in Atlanta, GA.

5. Plaintiff Geraldine Andre ("G. Andre") is a natural person residing in McDonough, GA.

6. Plaintiff Djivenino Andre ("D. Andre") is a natural person residing in McDonough, GA.

7. Marlon Hester, Sr. ("Hester") is a natural person residing in Plainfield, IL.

8. Plaintiff Monika Griffin ("Griffin") is a natural person residing in Peachtree Corners, GA.

9. Defendant Financial Education Services, Inc. is a Michigan corporation with its principal place of business in Livonia, MI and does business under the assumed name of United Wealth Education ("UWE"). At all relevant times, UWE marketed and sold credit repair services and investment opportunities throughout the United States.

10. Defendant United Wealth Services, Inc. ("UWS") is a Michigan corporation with its principal place of business in Farmington Hills, MI and does business under the assumed name of United Wealth Education. At all relevant times, UWE marketed and sold credit repair services and investment opportunities throughout the United States.

11. Defendants are closely related entities that are owned, managed, and controlled by a common group of individuals.

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d)(2).

13. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) Defendants maintain their principal places of business in this district.

<u>FACTS APPLICABLE TO ALL PLAINTIFFS</u>

14. Defendants, in a joint and coordinated manner, marketed and sold credit repair services and investment opportunities throughout the United States.

15. To market their credit repair services, Defendants recruited individuals who were themselves customers of Defendants to act as sale agents. Those sales agents could then recruit others to work for Defendants as part of a multi-level marketing program. Each agent was required to pay an annual fee to Defendants to retain their status as agent. They were also required to pay a regular monthly membership fee.

16. Defendants represented to Plaintiffs that agents could make substantially more from the marketing plan than it cost to participate as an agent.

17. The agents would then be paid based upon his or her sales, as well as upon the sales of those he or she recruited into the program.

18. Based on an agent's gross sales (both her own and those who worked beneath her), an agent would achieve different ranks within Defendants' organizations. Each rank came with its own pay structure and benefits– the higher the rank the better the pay structure, bonuses, and benefits.

19. Each named Plaintiff was engaged as an agent of one or both Defendants as agents and were marketing Defendants' services in early 2022. The relationship between Plaintiff and Defendants was governed by an Independent Sales Representative Agreement ("Agreement"). The individual Agreements are not attached hereto because Plaintiffs were not

provided copies of the Agreement they signed when engaged by Defendants. Also, the Agreements contain a confidentiality provision which may bar public disclosure of their content.

20. The Agreement contains a choice of law provision designating Michigan law as governing the relationship of the parties.

21. In May 2022 the Federal Trade Commission filed suit against Defendants, among others, in the United States District Court for the Eastern District of Michigan, Case No. 2:22-cv-11120-BAF-APP alleging a variety of violations of federal law ("FTC Action").

22. As part of the FTC Action, the district court issued a temporary restraining order on May 24, 2022 (the "TRO"), shutting down all Defendants' operations, freezing their assets, and appointing a receiver.

23. Upon the issuance of the TRO, Defendants informed their higher-ranking agents, including some of Plaintiffs, that they did not expect Defendants would be permitted to recommence their business operations and encouraged the agents to seek work elsewhere, including with competing companies.

24. Those Plaintiffs whom Defendants did not directly inform about the companies' apparent demise were notified by persons who were directly informed.

25. As a result of the TRO, the Defendants' statements, and the cessation of Defendants' operations, virtually all of Defendants sales agents sought

employment elsewhere. Many went to work for companies directly competing with Defendants, such as MWR Financial, Novae, Real Rise, Credit Repair Cloud, and Credit Cleanse. Those who had teams of sales agents beneath them, often took those teams with them to their new company. This was done with Defendants full knowledge and blessing.

26. On June 30, 2022, the district court in the FTC Action held a hearing on the FTC's request for preliminary injunction. And on July 18, 2022, the district court issued an order overruling the FTC's request, vacating the TRO, and converting the receivership to a monitorship. In other words, Defendants were permitted to recommence their business operations, subject to certain conditions imposed by the Court.

27. Thus, in approximately early August 2022, Defendants resumed business. Many of Defendants' former agents, including Plaintiffs, rejoined Defendants, bringing some or all their agent teams with them.

### FACTS SPECIFIC TO MICHELLE COFER

28. M. Cofer began her business relationship with Defendants around April 21, 2017. As was contemplated under Defendants' business model, she built a large sales team over many years and reached the rank of Executive Ambassador by spring 2022. For the calendar year 2021, her gross income from Defendants was approximately $169,000.

29. Like other agents, M. Cofer left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered. She entered into an

arrangement with MWR Financial along with many agents from her team.

30. When Defendants resumed business operations in August 2022, M. Cofer returned to Defendants. However, like many other agents, she also pursued business arrangements with other companies. One company she developed an arrangement with was Debt Cleanse, a licensed legal referral plan that focuses on assisting consumers with credit and consumer law problems.

31. In September 2022, when she sought to enroll a new member in UWE, she learned that her access to Defendants' computer systems had been terminated, preventing her from the entire business platform on which Defendants' business operated.

32. When M. Cofer confronted management about the termination of her access, she was informed that her arrangement with Debt Cleanse violated a company policy. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

33. Defendants' termination of M. Cofer was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of M. Cofer in

September 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against M. Cofer for the purpose of avoiding paying fees and commissions rightfully owed to her.

34. Since she was wrongfully terminated, M. Cofer has not received any of the fees, commissions, or bonuses she was entitled to.

35. Under the Agreement, because of her rank with Defendants' organizations, upon her wrongful termination by Defendants, M. Cofer became entitled to liquidated damages equal to her gross compensation from Defendants for the prior 24 months.

## FACTS SPECIFIC TO KEEDIC COFER

36. K. Cofer began his business relationship with Defendants in 2017. As was contemplated under Defendants' business model, he built a sales team and reached the rank of Vice President by spring 2022. For the calendar year 2021, his gross income from Defendants was approximately $100,000.

37. Like other agents, K. Cofer left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

38. When Defendants resumed business operations in August 2022, K. Cofer returned to Defendants. However, like many other agents, he also

pursued business arrangements with other companies. One company he developed an arrangement with was Debt Cleanse.

39. In September 2022, when he learned that his access to Defendants' business platform had been terminated because of his relationship with Debt Cleanse. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

40. Defendants' termination of K. Cofer was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of K. Cofer in September 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against K. Cofer for the purpose of avoiding paying fees and commissions rightfully owed to him.

41. Since he was wrongfully terminated, K. Cofer has not received any of the fees, commissions, or bonuses he was entitled to.

42. Under the Agreement, because of his rank with Defendants' organizations, upon his wrongful termination by Defendants, K. Cofer

became entitled to liquidated damages equal to his gross compensation from Defendants for at least the prior 12 months.

FACTS SPECIFIC TO CORTEZ JENKINS

43. C. Jenkins began his business relationship with Defendants in November 2017. As was contemplated under Defendants' business model, he built a sales team and reached the rank of Vice President by spring 2022. For the calendar year 2021, his gross income from Defendants was approximately $50,000.

44. Like other agents, C. Jenkins left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

45. When Defendants resumed business operations in August 2022, C. Jenkins returned to Defendants. However, like many other agents, he also pursued business arrangements with other companies. One company he developed an arrangement with was Debt Cleanse.

46. On approximately October 12, 2022, C. Jenkins received an email from "Robert F.," UWE's Compliance Manager, notifying him that his "back-office access" had been terminated because of a violation of Defendants Policies and Procedures relating to engaging in other network marketing programs. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

47. Included in the October 12, 2022 email to C. Jenkins Sue Griffin, an UWE executive. Ms. Griffin responded to the email, perhaps not realizing she was responding to C. Jenkins, as well, with: "Everyone of these agents will end up being terminated."

48. Defendants' termination of C. Jenkins was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of C. Jenkins in October 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against C. Jenkins for the purpose of avoiding paying fees and commissions rightfully owed to him.

49. Since he was wrongfully terminated, C. Jenkins has not received any of the fees, commissions, or bonuses he was entitled to.

50. Under the Agreement, because of his rank with Defendants' organizations, upon his wrongful termination by Defendants, C. Jenkins became entitled to liquidated damages equal to his gross compensation from Defendants for at least the prior 12 months.

## FACTS SPECIFIC TO TAMEISHA JENKINS

51. T. Jenkins began her business relationship with Defendants in December 2017. As was contemplated under Defendants' business model, she built a modest sales team and reached the rank of Sales Director by spring 2022.

For the calendar year 2021, her gross income from Defendants was approximately $20,000.

52. Like other agents, T. Jenkins left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

53. When Defendants resumed business operations in August 2022, T. Jenkins returned to Defendants. However, like many other agents, she also pursued business arrangements with other companies. One company she developed an arrangement with was Debt Cleanse.

54. On approximately October 12, 2022, T. Jenkins learned that her "back-office access" had been terminated because of a violation of Defendants Policies and Procedures relating to engaging in other network marketing programs. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

55. Defendants' termination of T. Jenkins was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of T. Jenkins in October 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against

T. Jenkins for the purpose of avoiding paying fees and commissions rightfully owed to her.

56. Since she was wrongfully terminated, T. Jenkins has not received any of the fees, commissions, or bonuses she was entitled to.

57. Under the Agreement, because of her rank with Defendants' organizations, upon her wrongful termination by Defendants, T. Jenkins became entitled to liquidated damages equal to her gross compensation from Defendants for at least the prior 12 months.

### FACTS SPECIFIC TO MARLON HESTER, SR.

58. Hester began his business relationship with Defendants in December 2016. As was contemplated under Defendants' business model, he reached the rank of Senior Vice President by spring 2022. For the calendar year 2021, his gross income from Defendants was approximately $200,000.

59. Like other agents, Hester left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

60. When Defendants resumed business operations in August 2022, Hester returned to Defendants. However, like many other agents, he also pursued business arrangements with other companies. One company he developed an arrangement with was Debt Cleanse.

61. On September 18, 2022, Hester noticed that his back-office access had been terminated. He was informed by one of Defendants' founders, Parimal Naik, that because he had joined Debt Cleanse, he was being

terminated. When Hester told Naik that many of Defendants' agents were working with other companies, Naik responded that working with other companies was allowed, just not Debt Cleanse. Naik also stated the reason for the termination "is personal now."

62. Defendants' termination of Hester was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of Hester in September 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against Hester for the purpose of avoiding paying fees and commissions rightfully owed to him.

63. Since he was wrongfully terminated, Hester has not received any of the fees, commissions, or bonuses he was entitled to.

64. Under the Agreement, because of his rank with Defendants' organizations, upon his wrongful termination by Defendants, Hester became entitled to liquidated damages equal to his gross compensation from Defendants for at least the prior 24 months.

## FACTS SPECIFIC TO GERALDINE ANDRE

65. G. Andre began her business relationship with Defendants in November 2018. As was contemplated under Defendants' business model, she built a

modest sales team and reached the rank of Executive Sales Director by spring 2022. For the calendar year 2021, her gross income from Defendants was approximately $40,000.

66. Like other agents, G. Andre left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

67. When Defendants resumed business operations in August 2022, G. Andre returned to Defendants. However, like many other agents, she also pursued business arrangements with other companies. One company she developed an arrangement with was Debt Cleanse.

68. On approximately October 12, 2022, G. Andre received an email from Robert F.  informing her that her "back-office access" had been terminated because of a violation of Defendants Policies and Procedures relating to engaging in other network marketing programs. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

69. Defendants' termination of G. Andre was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of G. Andre in October 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all

agents. Further, Defendants selectively enforced such provisions against G. Andre for the purpose of avoiding paying fees and commissions rightfully owed to her.

70. Since she was wrongfully terminated, G. Andre has not received any of the fees, commissions, or bonuses she was entitled to.

71. Under the Agreement, because of her rank with Defendants' organizations, upon her wrongful termination by Defendants, G. Andre became entitled to liquidated damages equal to her gross compensation from Defendants for at least the prior 12 months.

## FACTS SPECIFIC TO DJIVENINO ANDRE

72. D. Andre began his business relationship with Defendants in March 2019. As was contemplated under Defendants' business model, he built a modest sales team and reached the rank of Sales Director by spring 2022. For the calendar year 2021, his gross income from Defendants was approximately $10,000.

73. Like other agents, D. Andre left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

74. When Defendants resumed business operations in August 2022, D. Andre returned to Defendants. However, like many other agents, he also pursued business arrangements with other companies. One company he developed an arrangement with was Debt Cleanse.

75. On approximately October 12, 2022, D. Andre learned that his "back-office access" had been terminated because of a violation of Defendants Policies and Procedures relating to engaging in other network marketing programs. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

76. Defendants' termination of D. Andre was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of D. Andre in October 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against D. Andre for the purpose of avoiding paying fees and commissions rightfully owed to him.

77. Since she was wrongfully terminated, D. Andre has not received any of the fees, commissions, or bonuses he was entitled to.

78. Under the Agreement, because of his rank with Defendants' organizations, upon her wrongful termination by Defendants, D. Andre became entitled to liquidated damages equal to his gross compensation from Defendants for at least the prior 12 months.

## FACTS SPECIFIC TO MONIKA GRIFFIN

79. Griffin began her business relationship with Defendants in February 2017. As was contemplated under Defendants' business model, she built a sales team and reached the rank of Vice President by spring 2022. For the calendar year 2021, her gross income from Defendants was approximately $42,000.

80. Like other agents, Griffin left Defendants in May 2022 when the FTC Action was commenced and the TRO was entered.

81. When Defendants resumed business operations in August 2022, Griffin returned to Defendants. However, like many other agents, she also pursued business arrangements with other companies. One company she developed an arrangement with was Debt Cleanse.

82. On approximately October 11, 2022, Griffin learned that her "back-office access" had been terminated when she tried to log in to the system. The following day she learned she had been terminated because of a violation of Defendants Policies and Procedures relating to engaging in other network marketing programs. However, many other agents still working with Defendants had similar business arrangements with other companies that compete directly with Defendants, and none of these agents have been terminated by Defendants.

83. Defendants' termination of Griffin was wrongful for two reasons. First, the termination in May 2022 was the result of Defendants' violation of federal law, as outlined in the FTC Action, and in breach of its duties under the Agreement. Second, Defendants' termination of Griffin in October 2022 arbitrary and capricious in that Defendants claimed to be enforcing a contract provision which they did not apply uniformly to all agents. Further, Defendants selectively enforced such provisions against Griffin for the purpose of avoiding paying fees and commissions rightfully owed to him.

84. Since she was wrongfully terminated, Griffin has not received any of the fees, commissions, or bonuses she was entitled to.

85. Under the Agreement, because of her rank with Defendants' organizations, upon her wrongful termination by Defendants, Griffin became entitled to liquidated damages equal to her gross compensation from Defendants for at least the prior 12 months.

## FACTS SPECIFIC TO THE CLASS

86. All allegations contained in paragraphs 1 through 76 above are incorporated herein by reference.

87. Plaintiff brings this action pursuant to Fed R. Civ. P. 23 on behalf of a class of all similarly situated individuals and entities (the "Class"), defined as follows:

All Defendants' sales agents who were terminated by Defendants because of their association with Debt Cleanse and who were entitled to damages for wrongful termination under the Agreement.

88. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impractical.  Although Plaintiff does not know the exact size of the Class at this time, Plaintiff estimates the number of Class members to exceed 40 based on information available as of this filing.   The exact number of members in the Class can be ascertained through discovery and can easily be identified through Defendants' records or by other means.

89. **Commonality and Predominance**:  All members of the Class have been subject to and affected by a uniform course of conduct.  Specifically, all Class members were wrongfully terminated by Defendants through a systematic process that targeted only those agents who were associated with Debt Cleanse.   There are questions of law and fact common to the proposed Class that predominate over any individual questions.

90. **Typicality**: Plaintiffs' claims are typical of the Class.  Plaintiffs' and Class members' claims arise from the same type conduct by Defendants. The injuries suffered by the Class members is the same type suffered by Plaintiffs.

91. **Adequacy**: Plaintiffs will adequately represent the interests of the Class and do not have any interests adverse to the Class. Plaintiffs have retained competent counsel experienced in complex class action litigation.

92. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy because questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. As noted above, Plaintiff's and Class members' claims are all based on the same legal and factual issues.

COUNT I

VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

93. All allegations contained in paragraphs 1 through 92 above are incorporated herein by reference.

94. The multi-level marketing plan operated by Defendants constitutes a "business opportunity" within the meaning of M.C.L. 445.902(a) because it enabled the Plaintiffs to derive income from the program that exceeded the price paid for the business opportunity.

95. As part of the compensation structure for agents, Defendants represented that they would waive monthly or annual fees charged to agents if those agents recruited a certain number of new agents into the program. Defendants also offered promotions, contests, and incentives to agents for their production.

96. Defendants' multi-level marketing program violates M.C.L. 445.903(1)(n).

97. As a result of Defendants' violation of law, Plaintiffs and the Class members are entitled to damages pursuant to M.C.L. 445.911.

COUNT II

BREACH OF CONTRACT

98. All allegations contained in paragraphs 1 through 97 above are incorporated herein by reference.

99. Plaintiffs and Defendants were parties to the Agreement, as set forth above, whereby Plaintiffs and the Class members were entitled to fees, commissions, bonuses and benefits in exchange for services provided.

100.     In the performance of the Agreement, Defendants were obligated to comply with applicable law, including the Federal Trade Commission Act, the federal Credit Services Organizations Act, and the Michigan Consumer Protection Act.

101.     Defendants breached their obligations by failing to comply with such laws.

102.     These breaches resulted in the termination of Plaintiffs' and the Class members businesses in May 2022 with the Entry of the TRO.

103.     Because of Defendants breach of its contractual obligations to Plaintiffs and the Class members, Plaintiffs and the Class have been damaged.

COUNT III

BREACH OF CONTRACT

104.     All allegations contained in paragraphs 1 through 103 above are incorporated herein by reference.

105.     Upon the termination of Plaintiffs' business in May 2022, Defendants waived their rights under the Agreement regarding enforcement of any non-compete provision in the Agreement, and were estopped from enforcing such provision, by encouraging and permitting agents to work for multi-level marketing businesses that competed with Defendants.

106.     Upon resuming their business operations in August 2022, Defendants again waived their rights under the Agreement regarding enforcement of any non-compete provision in the Agreement, and were estopped from enforcing such provision, by encouraging and permitting agents to work for other multi-level marketing businesses that competed with Defendants while also working for Defendants.

107. Defendants have breached their obligations under the Agreement by enforcing a contractual provision it expressly waived.

108. Defendants have breached their obligations by selectively, arbitrarily, and capriciously enforcing a contractual provision they have expressly waived against Plaintiffs and the Class members.

109. Because of Defendants breach of its contractual obligations to Plaintiffs and the Class members, Plaintiffs and the Class have been damaged.

COUNT IV

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

110. All allegations contained in paragraphs 1 through 109 above are incorporated herein by reference.

111. Plaintiffs and the Class members created and maintained valid business relationships with the agents on their teams.

112. Defendants knew of the existence of those relationships, and in fact, their business models relied on those relationships.

113. By terminating Plaintiffs and the Class members, Defendants interfered with the relationships between Plaintiff and the Class members and the agents on their teams.

114. Defendants' actions were wrongful because they were done in breach of the Agreement, were done after waiver of the contractual basis for the terminations, and were done in an arbitrary and capricious manner.

115. Defendants' actions were taken in bad faith and with malice. The text comment by Parimal Naik to Hester that the decision "is personal now" indicates specific hostility that is not based on rational business decision-making.

116. By terminating Plaintiffs and the Class members, Defendants destroyed the teams that Plaintiffs and the Class members had built. In many cases, Defendants retained or attempted to retain the agents on Plaintiffs' teams, depriving Plaintiffs of the benefit of their business relationships with those agents.

117. As a result of Defendants' conduct, Plaintiffs and the Class members have been damaged.

COUNT V

BREACH OF CONTRACT

118. All allegations contained in paragraphs 1 through 117 above are incorporated herein by reference.

119. Once the TRO was entered, Defendants stopped paying Plaintiffs and the Class members for fees, commissions, bonuses, and benefits that had accrued prior to entry of the TRO.

120. Defendants have not made complete payment of such fees, commissions, bonuses, and benefits since it has resumed business.

121. Defendants failure to pay Plaintiffs and the Class members everything to which they were entitled under the Agreement is a breach of contract that has harmed Plaintiffs and the Class.

WHEREFORE, Plaintiffs ask the Court to award the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D. Issuing an order awarding Plaintiff and Class members their damages in an amount greater than $5,000,000, plus interest as provided for by applicable law;

E. Awarding Plaintiff reasonable attorney's fees and costs; and

F. Granting all such further and other relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Jennifer Paillon
JENNIFER PAILLON (P80284)
Attorney for Plaintiff
BLUE LOTUS LEGAL
30790 Valley Dr.
Farmington Hills, MI 48334
734-904-9522
BlueLotusLegal@gmail.com


MARC E. DANN
(Pro Hac Vice admission anticipated)
Attorney for Plaintiff
ADVOCATE ATTORNEYS LLP
15000 Madison Avenue
Lakewood, OH 44107
(202) 935-6991
mdann@advocateattorneys.com

Jury Demand
Plaintiffs demand a trial by jury as to all issues presented herein.


/s/ Jennifer Paillon