UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE COFER, *et al.*,

    Plaintiffs,

v.

FINANCIAL EDUCATION SERVICES, INC.
D/B/A UNITED WEALTH EDUCATION,
*et al*,

    Defendants.
_____/

Case No. 22-12759

F. Kay Behm
United States District Judge

## ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS (ECF No. 32)

**I.  PROCEDURAL HISTORY**

This case is before the court on Defendants Financial Education Services, Inc. (FES) and United Wealth Services, Inc.'s (UWS) motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  (ECF No. 32).  Plaintiffs Michelle Cofer, Keedric M. Cofer, Cortez Jenkins, Tameisha Jenkins, Marlon Hester, Sr., Geraldine Andre, Djivenino Andre, and Monkia Green filed a class action complaint on November 14, 2022 alleging violations of the Michigan Consumer Protection Act, breach of contract, and tortious interference with a business relationship.  (ECF No. 1).  Plaintiffs filed an amended complaint on March 27, 2023, adding a claim

for declaratory judgment. (ECF No. 12). On April 24, 2023, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and sought an order compelling arbitration pursuant to the parties' agreements. (ECF No. 16). The court held a hearing on the motion to dismiss on January 24, 2024. Defendants filed their motion for sanctions on February 14, 2024, which is fully briefed. (ECF No. 32, 34, 35).[1] On March 21, 2024, the court granted the motion to dismiss in part and ordered the parties to submit to arbitration. (ECF No. 36).

For the reasons set forth below, Defendants' motion for sanctions is **DENIED**.

**II.    FACTUAL BACKGROUND**

Defendants FES and UWS are Michigan corporations that do business under the assumed name United Wealth Education (UWE). (ECF No. 12, PageID.343). UWE marketed and sold credit repair services and investment opportunities across the United States. *Id.* Plaintiffs were engaged, at all relevant times, as Independent Sales Representatives (ISRs) with UWE. *Id.* at PageID.345. Plaintiffs allege they marketed Defendants' credit repair services while also recruiting individuals to act as sales agents as part of a multi-level marketing program. *Id.* at

---

[1] Defendants served their Rule 11 motion on Plaintiffs on October 6, 2023 and thus, have complied with Rule 11's "safe harbor" provision by giving Plaintiffs a minimum of 21 days to withdraw the disputed pleading before filing the motion for sanctions.

2

PageID.344.  Plaintiffs further allege that each sales agent was required to pay an annual fee to Defendants as well as a monthly membership fee to retain their status.  *Id*.  Each ISR was allegedly paid based upon their individual sales as well as the sales of those they recruited into the program.  *Id*.

The individual Plaintiffs allege their relationships with UWE were "ostensibly governed" by an Independent Sales Representative Agreement (ISR Agreement), but that they "were not provided copies of the agreement." *Id.* at PageID.345.  However, Plaintiffs acknowledge that "the Agreement contains a choice of law provision designating Michigan law as governing the relationship of the parties." *Id*.  Plaintiffs also argue that the ISR Agreement "did not [] state how Plaintiffs' commissions and bonuses were to be calculated and paid." *Id.* According to Defendants, the relevant provisions are reflected in the ISR Agreement posted on UWE's website and in the sample ISR Agreement provided to Plaintiffs' counsel.  (ECF No. 16, PageID.388).

According to Defendants, in the event of a disagreement between the parties, they specifically agreed that their disputes would be subject to binding arbitration.  More specifically ¶ 12, "Dispute Resolution," of the submitted ISR Agreement provides, in part:

3

> All disputes and claims relating to UWE, its services, the rights and obligations of an Independent Agent and UWE, or any other claims or causes of action relating to the performance of either an Independent Agent or UWE under the Agreement or the UWE Policies and Procedures shall be settled totally and finally by arbitration as enumerated in the Policies and Procedures in Farmington Hills, Michigan, or such other location as UWE prescribes, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association. Additionally, you agree not to initiate or participate in any class action proceeding against UWE, whether in a judicial or mediation or arbitration proceeding, and you waive all rights to become a member of any certified class in any lawsuit or proceeding.

(ECF No. 16-1, PageID.410). Section 10.3 of the Policies and Procedures includes a similar clause: "If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, of the breach thereof, shall be settled by confidential arbitration administered by the American Arbitration Association…" (ECF No. 16-2, PageID.438).

      Defendants maintain that each individual Plaintiff agreed to the relevant arbitration provisions on three separate occasions: (1) when they first began their relationship with FES, (2) when their ISR relationships were transferred from FES to UWS in 2021, and (3) upon the restarting of UWS's operations in 2022. (ECF No. 16, PageID.391-92). The exhibits provided in support of Defendants' motion

reveal that Plaintiff Michelle Cofer allegedly agreed to the ISR Agreement with FES and the corresponding Policies and Procedures on April 22, 2017, at 4:35:35 a.m. (ECF No. 16-3, Independent Sales Agent Application).  The other seven Plaintiffs similarly agreed to their own ISR Agreement with FES at various points between 2016 and 2019.  (ECF No. 16-4).  Although Plaintiffs initially began their relationships with FES, these relationships were transferred to UWS in August 2021.  (ECF No. 16, PageID.392).  Cofer allegedly entered into the UWS ISR Agreement on August 8, 2021, at 10:41:08 p.m., and each of the remaining seven Plaintiffs came on board with UWS anywhere from August 8 to August 11, 2021. (ECF No. 16-5, 16-6).  The Federal Trade Commission (FTC) filed suit against Defendants in May 2022, alleging a variety of violations of federal law.  (ECF No. 12, PageID.345).  As part of the FTC action, the district court issued a TRO on May 24, 2022, essentially shutting down Defendants' operations, freezing their assets, and appointing a receiver.  *Id.* at PageID.346.  When the TRO was issued, Plaintiffs allege that Defendants informed their higher-ranking agents, including some of the Plaintiffs, that they did not expect to restart their business operations and "encouraged the agents to seek work elsewhere, including with competing companies."  *Id.*  As a result, "virtually all" of Defendants' sales agents allegedly sought work elsewhere.  *Id.*  On July 18, 2022, however, the District Court issued

an order overruling the FTC's requests and "Defendants were permitted to recommence their business operations subject to certain conditions imposed by the Court." *Id.*, PageID.347. Plaintiffs allege that "[m]any of Defendants' former agents, including Plaintiffs, rejoined Defendants, bringing some or all of their agent teams with them." *Id.* Upon restarting their operations, each of the Plaintiffs received a pop-up message requiring them to again agree to the ISR Agreement and incorporated Policies and Procedures. (*See* ECF No. 16-7). Cofer allegedly agreed to the new ISR Agreement and Policies and Procedures on August 1, 2022. (*See* ECF No. 16-8). The other Plaintiffs allegedly agreed to the identical Policies and Procedures on August 1, 2022, or shortly thereafter. (*See* ECF 16-9).

## III.   ANALYSIS

Defendants argue that Plaintiffs should be sanctioned under Rule 11 for filing a frivolous complaint. According to Defendants, Plaintiffs' "artful pleading" regarding their signatures on the arbitration agreements is unwarranted under recent precedent and sanctionable. Defendants assert that Plaintiffs "walked back" their allegations in the original complaint that they signed the contracts in this case, subsequently claiming that they do not know if they signed the contracts. And regardless, Defendants argue that their later allegations do not

meet the standard to put an arbitration agreement at issue in this circuit. Accordingly, Defendants argue that Plaintiffs' claims are frivolous and sanctionable under Rule 11.

### A. Legal Standard

A court may impose sanctions when the court determines that the requirements of Rule 11(b) have been violated. Rule 11(b) provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 requires attorneys to refrain from pursuing meritless claims. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 627 (6th Cir. 2010). A court may impose sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Id*. (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). However, making the foregoing "determinations is difficult when there is nothing before the court except the challenged complaint." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

The test for determining whether to impose "sanctions is whether [an] individual's conduct was reasonable under the circumstances." *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002) (quoting *Union Planters Bank v. L & J Development Co., Inc.*, 115 F.3d 378, 384 (6th Cir. 1997)). Reasonableness should be assessed under an objective standard. *See Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). Courts should test the reasonableness of conduct by determining "what was reasonable to believe at the time the

pleading, motion, or other paper was submitted[,]" and should avoid using the "wisdom of hindsight" in their determinations. *Merritt*, 613 F.3d at 626.

Further, in general, a court should "be hesitant" to determine that a complaint violates Rule 11(b) when a suit is dismissed at the motion to dismiss stage. *Tahfs*, 316 F.3d at 594. Yet, a court may proceed with less hesitation when a party moves for sanctions after discovery is complete and there is a motion for summary judgment before the court. *Id*. Although courts should be watchful of complaints that assert baseless allegations, "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id*. at 595 (quoting *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 92 (6th Cir. 1991)).

B. <u>Analysis</u>

In *Tahfs*, the Sixth Circuit cautioned against determining that a party violated Rule 11 at the motion to dismiss stage of proceedings. Indeed, it expressly warned against reading "[un]warranted by existing law, as the expression is used in Rule 11(b)(2)[,]" to mean all claims that fail to satisfy Rule 12(b)(6). *James v. Caterpillar, Inc.*, 824 F. App'x 374, 378 (6th Cir. 2020) (quoting *Tahfs*, 316 F.3d at 595 (internal quotations marks omitted)). As the Advisory Committee Notes explain, parties should not employ a Rule 11 motion "to test the legal sufficiency or efficacy of allegations in the pleadings; other

9

motions are available for those purposes." *James*, 824 F. App'x at 378 (quoting Fed. R. Civ. P. 11(b), (c) advisory committee's note to the 1993 amendment.).

The court declines to grant the motion for sanctions under Rule 11. In the first instance, as explained in *Tahfs* and *James*, Rule 11 is generally not the proper vehicle to test the legal or factual sufficiency of a complaint. Defendants did that through their motion to dismiss and to compel arbitration, and the court ruled on that motion in their favor.[2] Accordingly, Rule 11 sanctions are not appropriate for this reason.

Secondly, while the court found that Plaintiffs' allegations did not meet the standard set forth in *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832 (6th Cir. 2021), the court did not find Plaintiffs' position to be frivolous. *See James*, 824 F. App'x at 379 n. 4) ("There may, for example, be a case in which a complaint on its face appears plausible enough to survive dismissal, but the defendant can easily show that it is, in fact, frivolous. In that case, an early Rule 11 dismissal is warranted."). More specifically, the court found that Plaintiffs' arguments that

---

[2] Defendants seek all costs and attorney fees incurred since the filing of the amended complaint based on Plaintiffs' purported failure to heed the teachings of *Boykin*. Notably, however, Defendants did not cite *Boykin* in either their motion to dismiss the amended complaint or their reply brief in support of that motion (ECF Nos. 16, 22) and did not serve the motion for sanctions citing *Boykin* until seven months after the amended complaint was filed. Significantly, <u>neither</u> side of this dispute brought *Boykin* to the court's attention. Instead, the court brought *Boykin* to the attention of the parties in its Notice dated September 12, 2023. (ECF No. 23).

they were "not provided copies of their agreements," "Defendants often changed the terms of the Agreement without Plaintiffs' knowledge or consent," and they "cannot be certain whether they actually signed an Agreement with Defendants or which version of the Agreement they signed" did not rise to level of an "unequivocal denial" under *Boykin* and did not place the formation of the contract "in issue." (ECF No. 36, PageID.934, citing *Boykin*, 3 F.4th at 839).  In the court's view, Plaintiffs' theory was not an unwarranted or frivolous argument to extend existing law, as shown below by revisiting the analysis in *Boykin*.

In *Boykin*, the Sixth Circuit compared the facts of two different cases to illustrate when a plaintiff has presented sufficient information to create a "genuine dispute" about the validity of an arbitration agreement.  3 F.4th at 840. Generally, the Sixth Circuit found that "convenient memory lapses do not create factual disputes that are genuine" and "[a] party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about an arbitration."  *Id.*  To illustrate this point, the Sixth Circuit cited *Tinder v. Pinkerton Sec.*, in which the plaintiff "argued that she had not accepted arbitration through her employment with Pinkerton Security because she did not receive materials announcing the arbitration policy."  305 F.3d 728 (7th Cir. 2002).  However, the defendant

provided evidence that the materials were "definitely sent" to Tinder. *Id.* at 736. Tinder's only evidence in opposition included an affidavit stating that she "did not 'recall' getting them," which was insufficient to create a genuine dispute. *Id.*

On the other hand, the Sixth Circuit held that an "'unequivocal denial' that takes the form of admissible 'evidence' can create a genuine issue of material fact." *Boykin*, 3 F.4th at 840. To illustrate this point, the Sixth Circuit cited *Camara v. Mastro's Restaurants, LLC* in which the plaintiff's employer testified that "virtually every" employee was required to sign the arbitration agreement and Camara's personnel records showed he had, in fact, done so. 952 F.3d 372, 374 (D.C. Cir. 2020). However, Camara testified "he had not seen or signed the agreement and was not aware of any arbitration policy." *Id*. The court found this conflicting evidence, including the question of whether Camara fell within the category of "virtually every employee," necessitated a trial under § 4. *Id.* at 374-75.

The Sixth Circuit noted that the evidence in *Boykin* fell "between the evidence in *Tinder* and *Camara*. *Boykin*, 3 F.4th at 340. Boykin testified that he "does not 'have knowledge or recollection' of accepting the arbitration contract or taking the arbitration session." *Id.* Subject to the penalties for perjury, he testified: "'I unequivocally did not consent to sign, acknowledge, or authorize any

12

type of arbitration agreement with [Family Dollar] on or after July 15, 2013 or at any time." *Id*. He also "flatly denied receiving information about arbitration: 'I was not informed by [Family Dollar] that I was required to enter into an arbitration agreement as a condition of my employment.'" *Id.* The defendant produced Boykin's personnel file which included "all available records," but did not include any arbitration-related records. *Id.* The Sixth Circuit reasoned that "[t]he 'absence' of these materials from Boykin's personnel file offers some relevant evidence supporting him" and found that "Boykin has identified a genuine dispute of fact over whether the parties have formed a contract – a dispute that entitles him to targeted discovery and a trial on the question." *Id.*

The uncertainty regarding whether Plaintiffs signed the governing agreements given the allegations that Defendants often changed the terms without Plaintiffs' consent rises above the level of a mere failure to recall as described in *Tinder*, or a "convenient memory lapse" as Defendants argue. Accordingly, it was not frivolous for Plaintiffs to argue that their assertions – that they were "not provided copies of their agreements," "Defendants often changed the terms of the Agreement without Plaintiffs' knowledge or consent," and they "cannot be certain whether they actually signed an Agreement with Defendants or which version of the Agreement they signed" – might rise to the level of

13

"unequivocal denial" under *Boykin* and place the formation of the contract "in issue." *See Boykin*, 3 F.4th at 839. Accordingly, at the motion to dismiss stage, the court finds that Plaintiffs' position was not frivolous and was not so egregious as to be sanctionable. *See* Wright & Arthur A. Miller, Federal Practice and Procedure § 1336.3 (4th ed. 2020) ("Dismissals for frivolous actions ordinarily should be made under 12(b)(6), and a Rule 11 sanction could be made in conjunction with a grant of that motion if the litigant's behavior was particularly egregious."). For this additional reason, the motion for sanctions is denied.

### IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Defendants' motion for Rule 11 sanctions. This is a final order and closes the case.

**SO ORDERED**.

Date: September 16, 2024         s/F. Kay Behm
                                 F. Kay Behm
                                 United States District Judge

14